Points Decided.

(November 29, 1913.)

## TWIN FALLS COUNTY, Respondent, v. H. T. WEST et al., Appellants.

[137 Pac. 171.]

FEES FOR RECORDING—LIABILITY OF OFFICER FOR STATUTORY FEES—
FAILURE TO COLLECT FEES UNDER DIRECTION OF BOARD OF COMMIS-
SIONERS—SETTLEMENT WITH OFFICER—ESTOPPEL.

1. Where a statute fixes the fees to be charged for recording
written instruments, the board of county commissioners have no
power or authority to change the fee and to direct and require the
recorder to record such instruments at a less or different rate than
that prescribed by statute.

2. Where the board of county commissioners entered into an
agreement or arrangement with the representative of a land and
water company, whereby it was agreed that a certain class of in-
struments should be recorded at a flat rate of so much per instru-
ment, irrespective of the number of folios contained in the instru-
ment, and the amount charged was not equal to the amount required
by statute, and the county recorder followed and carried out the
terms of the arrangement and agreement and did the recording for
the amount specified and returned the fees so collected to the county
and made his reports and settled with the county, and the board of
commissioners approved and allowed his reports and accounts, and
it is admitted that the recorder turned over to the county all the
fees actually received by him; and after the expiration of his term
of office, and the term of office of the board of commissioners who
made and entered into such agreement, the board of commissioners
commences an action against the recorder for the collection of the
sum which represents the difference between the amount actually
received and the amount required by statute; *held,* that it would be
inequitable and unjust to allow the county to maintain such action
against the officer and his bondsmen and that the doctrine of es-
toppel ought to apply against the county in such case.

3. Under such circumstances, the only remedy left to the county
is to pursue the person or corporation that had the work done, for
the balance due under the statute.

APPEAL from the District Court of the Fourth Judicial
District for Twin Falls County. Hon. C. O. Stockslager,
Judge.

Action by the county on the official bond of the ex-recorder of the county. Judgment for the plaintiff and defendants appealed. *Reversed.*

S. H. Hays, Sweeley & Sweeley and W. P. Guthrie, for Appellants.

The county is estopped from maintaining this action. (11 Am. & Eng. Ency. of Law, 428.)

A settlement is binding on the county in case the only mistake made therein is one of law. (*State v. Shipman,* 125 Mo. 436, 28 S. W. 842.)

Where a county board settled with the county treasurer and passed and approved his accounts, this settlement was final and the county could not recover. (1 Herman on Estoppel, sec. 435.)

A settlement made by the collector with the county court for county taxes is a bar to an action by a creditor on the collector's bond. (*Missouri v. Winterbottom,* 123 U. S. 215, 8 Sup. Ct. 98, 31 L. Ed. 124.)

Where a full and complete settlement with a county officer is made, such settlement is final and conclusive unless there is fraud, mistake or imposition in making the same. (*Douglas County v. Bennett,* 61 Neb. 660, 85 N. W. 833; *Ragoss v. Cuming Co.,* 36 Neb. 375, 54 N. W. 683.)

The board of county commissioners has power to settle controversies and the settlement of a *bona fide* dispute will be upheld. (*Multnomah County v. Title etc. Co.,* 46 Or. 523, 80 Pac. 409.)

Money paid under a mistake of law cannot be recovered back and a settlement made under like mistake cannot be opened. (*Territory v. Newhall,* 15 N. M. 141, 103 Pac. 982; *American Brewing Co. v. St. Louis,* 187 Mo. 367, 86 S. W. 129, 2 Ann. Cas. 821; *Lamborn v. Board of County Commrs.,* 97 U. S. 181, 24 L. ed. 926; *Douglas County v. Bennett,* 61 Neb. 660, 85 N. W. 833; *Wilcox v. Perkins County,* 70 Neb. 139, 113 Am. St. 779, 97 N. W. 236.)

An estoppel will run against states and counties. (*State of Indiana v. Milk,* 11 Fed. 389, 11 Biss. 197; *United States v. Wallamet V. & C. M. Wagon Road Co.,* 44 Fed. 234.)

A. R. Hicks, for Respondent.

Appellants argue that the county is estopped from maintaining this action because no one appealed and recovery would work a hardship on the recorder.

It is also contended when the board of county commissioners audited the quarterly reports of the recorder and settled with him the audit and settlement is a judicial act and is final unless appealed.

Both of these contentions conflict with the rule of law laid down in *Lincoln County v. Twin Falls North Side Land & Water Co.,* 23 Ida. 433, 130 Pac. 788, 790. This decision ought to be decisive of the case at bar. (See, also, *Gorman v. Board of Commrs.,* 1 Ida. 553; *Conger v. Board,* 5 Ida. 347, 48 Pac. 1046; *Fremont County v. Brandon,* 6 Ida. 482, 56 Pac. 264; *McNutt v. Lemhi County,* 12 Ida. 63, 84 Pac. 1054; *Miller v. Smith,* 7 Ida. 204, 61 Pac. 824; *Howell v. Board of Commrs.,* 6 Ida. 154, 53 Pac. 542; *Ferry v. King County,* 2 Wash. 337, 26 Pac. 537, 538; *Satterfield v. People,* 104 Ill. 448; *People v. Brinkerhoff,* 68 N. Y. 259, 262; *Silver Bow County v. Davies,* 40 Mont. 418, 107 Pac. 81; 11 Cyc. 468, subd. 2.)

From this long line of decisions in this state it is apparent that under the law applicable here, notwithstanding some conflicting decisions cited by the appellants from other jurisdictions under different statutes and precedents, the board of county commissioners have only such jurisdiction and powers as are given them by statute and that they have no power to set aside a statute. And the county is not estopped by their acts done in violation of law.

AILSHIE, C. J.—This action was instituted against H. T. West and the U. S. Fidelity and Guaranty Co. to recover on an official bond which West had given for the faithful dis-

charge of the duties of clerk of the district court and *ex-officio* county recorder of Twin Falls county.

Twin Falls county was formerly a part of Cassia county, and the territory now comprised in Twin Falls county was organized by act of the legislature of February, ·1907, and the appellant West was appointed to the office of clerk of the district court and *ex-officio* county recorder. Prior to the creation of Twin Falls county, and while it was yet a part of Cassia county, the county recorder and board of commissioners of Cassia county had entered into some kind of an arrangement with the Twin Falls Land & Water Co., whereby the county was to give the latter corporation a straight flat rate of forty cents each for recording what were commonly designated as water contracts, whereby the company contracted with purchasers of water rights for watering lands under their canal system for the sale of such right to the purchaser. At the time West went into office the representative of the water company appeared before the board of county commissioners of Twin Falls county and asked the board to authorize and direct· the recorder to continue the same arrangement and agreement in the latter county by continuing to record all water right contracts issued by this land and water company at the flat rate of forty cents each. The appellant West thereupon advised the board and the representative of the company that the new county was paying something like double the salaries that had been paid in the old county of Cassia, and that it would consequently cost more to have the instruments recorded and that they should charge at least one dollar per instrument. It was finally understood and agreed that these instruments should be recorded at the flat rate of one dollar each, and the board of commissioners so agreed and instructed the recorder to charge accordingly. Thereafter and during West's term of office, he recorded a large number of these contracts, both for the Twin Falls Land & Water Co. and later on for the Twin Falls-Salmon River Land & Water Co., and from time to time made a report of his fees to the board of commissioners, and his reports were approved, settled and allowed, and after the

completion of his term he went out of office with his accounts all audited, allowed and approved. Thereafter and on the 29th day of April, 1911, the county, acting through a new and different board of commissioners, caused an action to be instituted against West and the surety company on his official bond for the recovery of the sum of $8,791.41, together with interest, which represented the difference between the price which he had charged these land and water companies for recording contracts and the amount that the recording thereof would have actually amounted to had he made the regular charge prescribed by the statute for recording such instruments. Defendant West and the surety company appeared and answered, and the case went to trial and resulted in a judgment in favor of the plaintiff and against the defendants, from which this appeal has been prosecuted. The material facts of the case are substantially as above set out.

The appellant contends that under these facts the county is estopped and precluded from maintaining its action against appellants for the recovery of the difference between the fees actually collected and that which should have been collected under the statute. The gist of this argument is that since the board of commissioners are the chief and superior officers of the county who have the supervision and control of the financial affairs of the county and the settlements with various county officers and the auditing and allowance of claims and accounts, they could not authorize and direct the recorder to do this recording for a fixed sum and then, after he has done the work as directed and collected only the amount agreed upon and after he has settled with the commissioners, maintain an action against him for the collection of the deficiency.

The county, on the other hand, contends that under the decision of this court in *Lincoln County v. Twin Falls North Side Land & Water Co.*, 23 Ida. 433, 130 Pac. 788, the board of commissioners had no power or authority to give any such instructions or to enter into any agreement whereby the recorder should record instruments for any less sum than that prescribed by the statute (sec. 2124, Rev. Codes). In the

opinion of that case, the court, in discussing the right of the county to sue the company that had the work done and holding that it might maintain the action directly against the company, said: "It may pursue the officer and his bondsmen or it may pursue directly the party who had the service performed." That language, however, was used in connection with the general discussion of the liability of the officer to respond to the county for the full statutory fees as well as the liability of the person or company having the recording done, and accordingly the court held that the right of action would lie against either the officer or the individual or corporation having the work done and directly liable for the payment of the fees. No question was discussed in that case of the liability of the officer directly to the county, where he had acted under instructions from the board of commissioners and had turned over to the county all the fees that he had actually collected under those instructions.

It is also true that the recorder was not obliged to follow the instructions of the commissioners or anyone else when they ran counter to the statute. He might have nevertheless insisted on the statutory fees and have required the payment of the same before doing the work. He no doubt thought, however, that it was his duty to follow the instructions of the board of commissioners, and accordingly did the work here in question at the uniform flat rate of one dollar per instrument recorded. It is admitted that the appellant accounted for and turned over to the county all the fees actually received by him. It is evident at a glance that a great wrong and injustice would be done appellant if, acting under these instructions and directions and the evident belief that he had a right to follow the advice and directions of the board of commissioners, he should now be obliged to pay to the county the difference between the fees actually received and the fees which he would have received had he demanded the amount provided by statute. Why the county should prosecute an action against the officer who did not receive the fees for the collection of something he did not receive, rather than prosecute an action against the real

debtor at whose instance and request the work was done, does not appear. It is nevertheless clear that under the decision of this court in the Lincoln county case that the person or corporation having the work done is liable for the balance which should have been paid at the time the work was done.

The question arises under the facts of this case as to whether the doctrine of estoppel, which under similar circumstances would unquestionably be applied to an individual, should not be applied to the county as a municipal corporation. We are aware that this rule is very rarely applied to the state, county or municipal corporations. It has, however, been adopted in exceptional and unusual cases against municipal corporations in a number of instances and was so applied by this court in *Boise City v. Wilkinson,* 16 Ida. 177, 102 Pac. 157, and in commenting upon the rule the court said:

"We recognize that, as a general rule, the doctrine of estoppel does not apply to municipal corporations, and we are not unmindful of the fact that the courts of many states have absolutely refused to apply it to such corporations. We are not prepared, however, to announce an unalterable and unexceptionable rule in this state which would inevitably result in perpetrating wrong and injustice in exceptional cases like this. Courts of equity are established for the administration of justice in those peculiar cases where substantial justice cannot be administered under the express rules of law, and to adopt a rigid rule that recognizes no exceptions would be to rob such courts of much of their efficacy and power for administering even-handed justice. The people in their collective and sovereign capacity ought to observe the same rules and standard of honesty and fair dealing that is expected of a private citizen. In their collective and governmental capacity, they should no more be allowed to lull the citizen to repose and confidence in what would otherwise be a false and erroneous position than should the private citizen."

A large number of authorities were cited in support of the conclusions there reached. In addition to the authorities cited in that case, the following are also in point: *Jordan v.*

*City of Chenoa,* 166 Ill. 530, 47 N. E. 191; *City of Los Angeles v. Cohn,* 101 Cal. 373, 35 Pac. 1002; *Hubbell v. City,* 64 Kan. 645, 68 Pac. 52; *Board of Commrs. v. City of Denver,* 30 Colo. 13, 69 Pac. 586; *Oliver v. Synhorst,* 48 Or. 292, 86 Pac. 376, 7 L. R. A., N. S., 243; and *City of Colorado Springs v. Colorado City,* 42 Colo. 75, 94 Pac. 316.

It strikes us that it would shock the sense of honesty and fair dealing of the average citizen as quickly for a county or other municipal corporation to recover a judgment against an officer under facts and circumstances such as are disclosed here, as it would for one individual to recover against another under a like state of facts and circumstances. Estoppel is an equitable doctrine to be applied in a court of conscience for the purpose of accomplishing even-handed justice. The application of that doctrine to the present case in an action between the county of Twin Falls and this appellant will certainly accomplish substantial justice and equity between the two litigants. The fact that Twin Falls county has lost over $8,000 by this transaction and that it ought to be able to recover it from the real debtor would not justify the courts in allowing the county to recover that sum from the officer who acted under the direction of the board of commissioners of the county and who might be obliged to lose the whole sum if a judgment like this should stand.

From what has been said it follows that the judgment in this case ought to be reversed, and it is so ordered, and the cause is remanded to the trial court with direction to dismiss the action. Costs awarded in favor of appellant.

SULLIVAN, J., Concurring Specially.—I concur in the conclusion reached by the majority of the court to the effect that the plaintiff cannot recover in this action. I am also of the opinion that the county cannot recover from anyone on the claim sued on herein. In my dissenting opinion in the case of *Lincoln County v. Twin Falls etc. Co.,* 23 Ida. 441, 130 Pac. 788, my views are expressed as to the right of the county to recover such fees as are claimed in this case.

STEWART, J.—I concur in the opinion of Chief Justice Ailshie in this case, except in the chief justice's language in approving the language used by the same chief justice in the opinion of *Lincoln v. Twin Falls North Side Land & Water Co.*, 23 Ida. 433, 130 Pac. 788, as follows: "It may pursue the officer and his bondsmen, or it may pursue directly the party who had the service performed." The reason for this is that in the present case we hold that the officer is not liable by reason of the facts shown in the case (and in that I concur), and the same reasoning, in my judgment, should also apply to both the bondsmen of the officer and the party who had the service performed. I see no reason for distinguishing the party from the bondsmen, who only guaranteed the performance of the duty of the officer according to law, and the party who had the services performed paid the money with the understanding that the charge made by the officer was the charge agreed to and approved by the county commissioners. While the language used above is perhaps true as a general rule, as was stated in that case and in the present case, the distinction I hold is that such rule should not be applied to the facts in this case.