(December 13, 1916.)

JEREMIAH W. ROBINSON, Mayor and Trustee, Appellant, v. HERBERT LEMP, Executor of the Estate of JOHN LEMP, Deceased, Respondent.

[161 Pac. 1024.]

TOWN SITES—ADVERSE POSSESSION—ESTOPPEL.

1. While, as a general rule, title to property held by a municipality for public use cannot be acquired by adverse possession, the opposite rule prevails where the property is held by it for other than a public use.

2. A municipal corporation may, by its conduct or the conduct of its officers and agents, be estopped to assert its claim of title to property.

3. *Held,* that under the facts in this case and the law applicable thereto respondent's testator acquired title to the property in controversy by adverse possession, and that appellant and Boise City are estopped from asserting any title or claim thereto.

[As to adverse possession of land devoted to public use, see notes in 87 Am. St. 775; 92 Am. St. 844.]

APPEAL from the District Court of the Third Judicial District for Ada County. Hon. Ed. L. Bryan, Presiding Judge.

Suit to cancel and annul certain deeds. Judgment for defendant. *Affirmed.*

J. P. Pope and J. B. Eldridge, for Appellant.

Lemp cannot claim adversely, as he holds the property as trustee. (2 Pomeroy, Eq. Jur., secs. 688, 770, 920.)

The plaintiff in this action sues on behalf of the community in its collective capacity, and as such is the trustee of an express trust, and his authority is plain and explicit under sec. 4092, Rev. Codes. (1 Pomeroy, Eq. Jur., secs. 418, 419; vol. 3, sec. 1080.)

The mayor of Boise City issuing this deed was charged with knowledge of the law and the extent of his authority to issue same, and Mr. Lemp was likewise bound to know the law. If he procured a deed from the mayor of the city in violation of law, then he is in no position to claim estoppel or laches (2 Pom. Eq. Jur., sec. 810; *Brant v. Virginia Coal & Iron Co.,* 93 U. S. 326, 23 L. ed. 927; *Henshaw v. Bissell,* 85 U. S. (18 Wall.) 255, 21 L. ed. 835; *Steel v. St. Louis Smelting, etc. Co.,* 106 U. S. 447, 1 Sup. Ct. 389, 27 L. ed. 226.)

No estoppel can arise out of facts of which each party had equal knowledge. (*Russell v. State,* 171 Ind. 623, 87 N. E. 13; *Bader v. Chicago Mill & Lumber Co.,* 134 Mo. App. 135, 113 S. W. 1154; *Sheffield Car Co. v. Constantine Hydraulic Co.,* 171 Mich. 423, Ann. Cas. 1914B, 984, 137 N. W. 305; *Spahr v. Cape,* 143 Mo. App. 114, 122 S. W. 379; *Stein v. Leeman,* 161 Cal. 502, 119 Pac. 663; 16 Cyc. 741, 745; *Houser v. Austin,* 2 Ida. 204, 10 Pac. 37.)

Limitations and laches never attach or apply in cases of fraud and collusion such as is charged and proven in this case. (*Wormley v. Wormley,* 8 Wheat. (21 U. S.) 421, 5 L. ed. 651; *Moore v. Crawford,* 130 U. S. 122, 9 Sup. Ct. 447, 32 L. ed. 878.)

"Generally, laches of public officers will not be imputed to the public, where no intervening rights of third parties are affected." (*Alexander v. Owen County,* 136 Ky. 420, 124 S. W. 386.)

It was not incumbent upon us to offer to return the taxes paid by Lemp upon the property in question, because he bought this property with his eyes open and knew he was violating the trust imposed upon it. He was therefore *in pari delicto* with Pinney, and the rule of equity and good conscience does not apply in such cases. (*Independent School Dist. v. Collins,* 15 Ida. 535, 128 Am. St. 76, 98 Pac. 857; 1 Pomeroy, Eq. Jur., sec. 385.)

A. A. Fraser and C. H. Lingenfelter, for Respondent.

The finding of fact by the lower court, sustained by the stipulation of counsel, that the property in controversy had never been dedicated to a public use or used for public purposes, is sufficient to sustain the judgment in favor of the defendant. (3 McQuillin on Mun. Corp., sec. 1158; *Ames v. City of San Diego,* 101 Cal. 390, 35 Pac. 1005; *People v. Banning Co.,* 167 Cal. 643, 140 Pac. 587; *Pioneer Investment & T. Co. v. Board of Education,* 35 Utah, 1, 136 Am. St. 1016, 99 Pac. 150.)

The city is estopped in this action by reason of its acts and proceedings had after the making and execution of the mayor's deeds. (*City of Davenport v. Boyd,* 109 Iowa, 248, 77 Am. St. 536, 80 N. W. 314; *Crocker v. Collins,* 37 S. C. 327, 34 Am. St. 752, 15 S. E. 951; *Reuter v. Lawe,* 94 Wis. 300, 59 Am. St. 891, 68 N. W. 955, 34 L. R. A. 733; *Smith v. City of Osage,* 80 Iowa, 84, 45 N. W. 404, 8 L. R. A. 633; *Hesse v. Strode,* 10 Ida. 250, 77 Pac. 634.)

A municipal corporation may be estopped by its laches from maintaining an action to recover possession of property

claimed by it. (*Boise City* v. *Wilkinson*, 16 Ida. 150, 102 Pac. 148.)

"An express trust, as well as an implied one, is repudiated by adverse possession and the statute of limitations begins to run from the time of such repudiation." (*Coe v. Sloan*, 16 Ida. 49, 100 Pac. 354.)

The statute of limitations runs in favor of a defendant chargeable as a trustee of an implied trust, and it is not necessary in order to set the statute in motion that he should have denied or repudiated such trust. (*Hecht v. Slaney*, 72 Cal. 363, 366, 14 Pac. 88; *Luco v. De Toro*, 88 Cal. 26, 25 Pac. 983, 11 L. R. A. 543; *Barker v. Hurley*, 132 Cal. 21, 63 Pac. 1071, 64 Pac. 480; *Broder v. Conklin*, 121 Cal. 282, 53 Pac. 699.)

Equity will refuse to interfere in case of implied trusts after long acquiescence not only where time has dimmed the facts, but even where it is perfectly clear that relief would originally have been given. (*Hendrickson v. Hendrickson*, 42 N. J. Eq. 657, 9 Atl. 742; Perry on Trusts, sec. 865.)

This is essentially an action for the recovery of real property, and therefore barred by sec. 4036, Rev. Codes. (*Murphy v. Crowley*, 140 Cal. 141, 73 Pac. 820; *Bradley Bros. v. Bradley*, 20 Cal. App. 1, 127 Pac. 1044; *Casserly v. Alameda County*, 153 Cal. 170, 94 Pac. 765; *Haarstick v. Gabriel*, 200 Mo. 237, 98 S. W. 760; *Payne v. Anderson*, 80 Neb. 216, 114 N. W. 148; *Tate v. Rose*, 35 Utah, 229, 99 Pac. 1003.)

MORGAN, J.—This action has heretofore been before this court upon appeal from a judgment of dismissal entered by reason of the refusal of the plaintiff to further plead after an order was made sustaining a demurrer to the complaint. The judgment was reversed and the cause remanded, with direction to the trial court to overrule the demurrer and to permit the defendant to answer. (*Hodges v. Lemp*, 24 Ida. 399, 135 Pac. 250.)

The purpose of the action is to procure a decree annulling and canceling two certain deeds, one made by James A. Pinney, as mayor of Boise City, and, as such, successor to the

trust created by the laws of the United States (U. S. Rev. Stats., sec. 2387, U. S. Comp. Stats. 1916, sec. 4791; 6 Fed. Stats. Ann. 344) and of the state of Idaho (Rev. Codes, secs. 2147 to 2169) relative to government town sites and the disposal of lots and parcels of land situated therein, and certain special and local laws enacted by the territorial legislature (Special and Local Laws of Idaho, pp. 30 and 33). The other deed was made by John M. Haines, as such mayor and trustee. These deeds conveyed to John Lemp, respondent's testator, certain lands in Boise City, as will more fully appear from the decision of this court above cited.

The defendant answered and filed a cross-complaint wherein he prayed that the cross-defendant, and his successors in interest, one of whom is appellant, he having been substituted for the original cross-defendant, be perpetually enjoined from claiming title to or interfering with his possession of the property; that he be decreed to be the owner thereof, and that his title be quieted. The cross-complaint was answered and a trial was had, which resulted in a decree for the defendant from which, and from an order overruling a motion for a new trial, this appeal is prosecuted.

Sec. 2387, U. S. Rev. Stats., provides for the entry at the proper land office, by the authorities of a town, if incorporated, of portions of the public lands of the United States which have been or may be settled upon and occupied as a town site, in trust for the several use and benefit of the occupants thereof, according to their respective interests, and that the execution of the trust, as to the disposal of the lots and the proceeds of the sale thereof, shall be conducted under such regulations as may be prescribed by the legislative authority of the state or territory in which the same is situated.

By the territorial act of January 6, 1871 (Special and Local Laws, p. 30), the mayor of Boise City was designated as trustee to execute the trust above mentioned, and he was directed to make and deliver to the occupants of lands within the town site, who were entitled thereto, deeds of conveyance according to their respective interests, and, with that end in view, to cause to be made and filed in his office a plat of

the town site and to give notice requiring all persons claiming lands to present their respective claims to him in writing. It was further provided that the occupants of the town site might, at any time within sixty days after the filing of the plat and the publication of the notice, make their applications for title to the property claimed by them. The act directed what proceedings should be had in the event of conflicting claims, and provided that if no adverse claim was filed, upon payment of a specified sum of money, the mayor should execute and deliver a deed of conveyance to the claimant. It was further provided that all lots and blocks, or portions thereof, remaining unclaimed for a period of three months after the first publication of the notice above mentioned should be sold by the mayor, at public auction, to the highest bidder, for cash, and the proceeds of the sale should be paid by him into the treasury of Boise City.

The act of the territorial legislature of January 15, 1875 (Special and Local Laws, p. 33), directed the mayor of Boise City to publish notice for thirty days that he would, within ninety days from the first publication, sell all lots and blocks, or portions thereof, within the city for which a mayor's deed had not been taken, at public auction, and to so sell and dispose of such property and pay the proceeds thereof, into the city treasury, unless, within the time specified in the notice, the parties claiming to own the property came forward and paid for and took deeds as provided by the act of 1871, *supra.*

Sec. 2169, Rev. Codes, provides, among other things, that the successor in office of the mayor or other officer who has entered lands under the town site laws of the United States, or is trustee for the execution of the trust in that behalf, whether acting as such under general law or a local or special act relating to any city or incorporated town, shall succeed to the trust and have authority to execute the same as fully as his predecessor, the original trustee, might have done while in office; also that when a mayor's or other trustee's deed of any block, lot, share or parcel of a town site has been lost or cannot be found and there is no record thereof in the office of the county recorder, such successor, upon proper application

to him showing that no such deed can be found to such property and that no deed thereto is of record in the office of the county recorder, and that the applicant, his ancestor, or predecessor or grantor has been in the quiet, peaceable and undisputed possession of the premises under claim of title for the full period of five years next before the application, must grant and convey the title to the applicant.

On January 13, 1868, the mayor of Boise City made application at the proper land office for a public land entry pursuant to the provisions of sec. 2387, *supra,* and on May 2, 1870, patent was issued to him, in trust, conveying, for the purposes mentioned in that act, the town site of Boise City, including that portion of the land here in controversy mentioned and described in the first cause of action stated in respondent's amended complaint, but it does not appear that the tract in question was deeded to any one prior to June 5, 1891, at which time appellant's predecessor conveyed it to John Lemp.

One of the allegations contained in the first cause of action stated in the amended complaint is to the effect that said tract of land was vacant, unclaimed and unoccupied at the time of entry of the town site, and that it remained so until about the year 1886, when, for the first time, Lemp asserted some claim over it. The trial court found that respondent failed to establish these facts by a preponderance of the evidence, or to the satisfaction of the court, and that the allegation is not true.

The evidence as to whether or not the land was occupied at the time of entry is, as might well be expected in view of the many years which elapsed between that date and the trial of the cause, exceedingly unsatisfactory, and we are not disposed to disturb the finding of the trial court in that particular, nor do we believe, in view of other facts disclosed by the record and of our conclusions relative to the law governing this case, that the point is one of controlling influence.

In 1897, Walter E. Pierce, mayor of Boise City, made application for an additional town site entry and in 1898 a patent was issued to him, in trust, pursuant to sec. 2387,

*supra,* conveying 1.13 acres as such additional town site, being the land which forms the subject of the second cause of action stated in the amended complaint. Thereafter, and in 1908, Mayor Haines, as successor to the trust, conveyed, by deed, the land in question to John Lemp.

As we understand the record, the land involved in this action was inclosed with a substantial fence about 1873. In 1878 Thomas D. Cahalan, who believed it to be a portion of a tract he owned but whose property, in fact, adjoined it, included the land in controversy, together with other lands, in a deed to John Lemp, and in 1886 again included it in a deed of other lands to him. Since the date of the first mentioned conveyance until the tract was platted into town lots and portions of it were sold, it was in the open, notorious, adverse and exclusive possession, control and occupancy of Lemp, who held it under claim of title. The unsold portion was so held and possessed by him until his death, and since then has been, in like manner, possessed, controlled and claimed by respondent, as executor of his estate, and at no time has Boise City, or any of its mayors, offered to sell it, or any portion of it, as unclaimed lands under the town site laws of the United States and of the territory and state of Idaho, but have, during many years prior to the commencement of this action, in various ways recognized the Lemp title to it.

The municipality accepted a plat and dedication of the tract under the name and style of Lemp's Triangle Addition to Boise City; it purchased a portion of it, erected a fire station thereon and still retains title thereto and possession thereof. It obtained an option, in writing, to buy the entire property and therein it is recited that John Lemp is the owner. During the years since respondent and his testator have claimed title to, and have occupied, controlled and possessed this property, and before the time of the trial of this case in the district court, taxes, general and special, amounting in principal and interest to the sum of $9,366.70, being all taxes assessed against it, have been collected, and a portion of them have been levied by and paid to Boise City. It is true appellant has offered to reimburse re-

spondent for the taxes paid, and interest thereon, but this can only be viewed in the light of an offer to do equity, and does not affect the fact that the city and its officials have, for many years, recognized the Lemp title.

These facts suggest the questions: Are the claims of appellant and his *cestui que trust*, the city, defeated by estoppel, and, have respondent and his testator acquired title by adverse possession, even though their claims under the town site laws were not well founded originally? While a number of other points have been ably argued by counsel, we believe an answer to the foregoing questions will dispose of the case and that the other matters presented need not be discussed in this opinion.

The rule is established by the great weight of authority that title to property held by a municipality for public use, such as for streets, parks, public building sites, etc., cannot be acquired by adverse possession, but the opposite rule prevails where the property is held by it for other than a public use. (Vol. 3, McQuillin on Municipal Corporations, sec. 1158; *Ames v. City of San Diego*, 101 Cal. 390, 35 Pac. 1005.)

It is also well established that a municipal corporation may, by its conduct or the conduct of its officers and agents, be estopped to assert its claim of title to property. (Vol. 3, McQuillin on Municipal Corporations, sec. 1159; *City of Davenport v. Boyd*, 109 Iowa, 248, 77 Am. St. 536, 80 N. W. 314; *Reuter v. Lawe*, 94 Wis. 300, 59 Am. St. 891, 68 N. W. 955, 34 L. R. A. 733; *Boise City v. Wilkinson*, 16 Ida. 150, 102 Pac. 148.)

Upon consideration of the foregoing facts and the law applicable thereto, we conclude that the property here in controversy is not, and cannot be, claimed by either appellant or Boise City for such a public use as would preclude respondent's testator from acquiring title thereto by adverse possession; that appellant and the municipality are estopped from asserting the claim here sought by them to be asserted and that the. judgment and order appealed from must be affirmed. It is so ordered. Costs are awarded to respondent.

Sullivan, C. J., and Budge, J., concur.